1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GINA M. KIRSHENMANN, | ) | 1:10-cv-00366 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

_____

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 7, 9.)  On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1960, attended some college, and received certification in respiratory therapy, previously working in that field.  (Administrative Record ("AR") 142, 87-88, 160.)  On March 1, 2006, Plaintiff filed an application for DIB and SSI, alleging disability beginning on December 24, 2004, due to spinal stenosis, ridiculpathy, and fibromyalgia.  (AR 142-43, 180-81.)

**A.    Medical Evidence**

Plaintiff tripped and fell at work on November 28, 2004, injuring her lower back.  (AR 256.) She was treated at Ming and Ashe Medical Center from December 1, 2004, through January 22, 2005, for her industrial injury, receiving prescriptions for Toradol and Ibuprofen.  (AR 255-73.)  On January 22, 2005, Plaintiff was instructed to return to work but to "[a]void strenuous lifting."  (AR 261.)

Plaintiff underwent an MRI of the lumbar spine on February 17, 2005, at Kern Radiology Medical Group, Inc., which revealed mild spondylosis, small disc protrusions in two places, and mild leftward convexity.  (AR 248.)  On February 21, 2005, Plaintiff was seen by Michael E. Davies, M.D. to review her MRI; she reported that her back was "feeling somewhat better" at that time.  (AR 340-41.)

Plaintiff first saw orthopedist Russell W. Nelson, M.D. in April 2005, and continued to see him regularly through April 2009.  (AR 346-438, 650-72, 690-99.)  At the first meeting on April 25, 2005, Plaintiff reported that on November 28, 2004, she tripped on a metal fire latch on the floor at work, landing on her left side and feeling a "pop" in her back.  (AR 388.)  Plaintiff stated that she developed "immediate pain" in her neck and upper and lower back, with radiating pain into her buttocks, hips, groin, left knee, and chest.  (AR 388.)  Dr. Nelson noted that Plaintiff returned to work a few days after her injury but that her condition "gradually worsened" due to her regular job duties.  (AR 389.)  Accordingly, Plaintiff had not worked since January 17, 2005.  (AR 389.)  Dr. Nelson found Plaintiff to be "temporarily totally disabled" at that time.  (AR 393.)  Plaintiff was seen by Dr. Nelson on a regular basis, and he continued to make the finding that Plaintiff was temporarily totally disabled through April 9, 2007.  (AR 348, 352, 356, 360, 364, 368, 372, 381, 399, 403, 407, 411, 415, 420, 423, 427, 431.)

1    On October 7, 2005. Kern Radiology Medical Group, Inc., performed a magnetic resonance

2    imaging ("MRI") on Plaintiff's cervical spine based on her complaint of worsening back pain. (AR

3    237-38.)  The results showed mild to moderate cervical spondylosis, small dorsal disc protrusions,

4    mild to moderate multilevel degenerative canal and foraminal stenoses, and mild ventral cord

5    flattening. (AR 238.)  However, the report noted that "[o]verall" there had been "little change since

6    the previous exam of 5/29/01."  (AR 238.)

7    Between September and November 2005, Plaintiff underwent a pain consult and a series of

8    epidural injections at Central Valley Pain Management.  (AR 544, 554-64.)  Plaintiff also sought

9    physical therapy at Terrio Therapy Fitness on October 17, 2005.  (AR 547-51.)  On May 26, 2006,

10   Plaintiff underwent a lumbar diskography and a translaminar epidural catheterization for post

11   diskogram pain at Pacific Hospital of Long Beach.  (AR 567-70.)  On July 7, 2006, Dr. Nelson

12   indicated that Plaintiff was awaiting authorization for lumbar disc replacement surgery.  (AR 430-

13   32.)

14   On August 4, 2006, state agency physician E.A. Fonte, M.D. reviewed Plaintiff's medical

15   records and completed a residual functional capacity ("RFC") assessment, finding that Plaintiff was

16   limited to light work.[2]  (AR 439-43.)  Plaintiff was limited to occasionally lifting 20 pounds,

17   frequently lifting 10 pounds, and could sit with normal breaks for about six hours in an eight-hour

18   workday. (AR 440.)  Plaintiff had occasional limitations regarding climbing, balancing, stooping,

19   kneeling, crouching, and crawling, and was limited in her ability to reach in all directions.  (AR 441.)

20   Plaintiff was seen by James McNairn, Psy.D. for a comprehensive psychiatric evaluation on

21   August 26, 2006.  (AR 444-50.)  Plaintiff was diagnosed with dysthymic disorder and mood disorder

22   due to chronic pain.  (AR 448.)  Dr. McNairn opined that Plaintiff would have impairments in

23   various work functions ranging from none to slight.  (AR 449-50.)

24

25
26   [2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in
     a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.
27   Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from
     an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's
28   RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and
     'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
     *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

On November 17, 2006, Sean Leoni, M.D. performed an initial comprehensive preoperative evaluation in preparation for spinal surgery.  (AR 784-790.)  On November 27, 2006, Plaintiff was admitted to St. John's Regional Medical Center where a diskectomy, a disc replacement surgery, of the L3-4 and L4-5 discs was performed.  (AR 702-783, 764-65.)  She was discharged on December 1, 2006.

Plaintiff was seen by Dr. Nelson on December 12, 2006, who reported that Plaintiff was "doing quite well following her two level disc replacement surgery" and that she was "quite happy." (AR 402-03.)  On January 10, 2007, Dr. Nelson again determined that Plaintiff was "doing fairly well" but had some "localized backache."  (AR 398.)  Plaintiff was going to "gradually increase her activities."  (AR 399.)  Dr. Nelson issued a permanent and stationary report for Workers' Compensation on March 28, 2007, finding that Plaintiff had "[i]ntermittent slight mid back pain and occasional slight low back pain. These pains are moderate with repetitive twisting, turning, bending and heavy lifting." (AR 692.)  As such, Plaintiff should be restricted to "light work only." (AR 692.)  On May 24, 2007, Dr. Nelson examined Plaintiff and indicated that "[o]verall, the low back is doing quite well."  (AR 669.)  However, Plaintiff had "some middle third thoracic pain along the spine" which appeared to be "muscular related."  (AR 669.)  Dr. Nelson prescribed a short course of physical therapy.  (AR 669.)

Also on May 24, 2007, Alan Sanders, M.D. reviewed Plaintiff's medical records.  (AR 673-89.)  Although Dr. Sanders had initially thought that Plaintiff's surgery would be a "mistake," he admitted that he was "wrong" and that Plaintiff had gotten a "great result from her surgery."  (AR 684.)  He questioned Dr. Nelson's evaluation method used on the permanent and stationary report and noted that "even according to Dr. Nelson, this patient's range of motion is essentially normal." (AR 684-85.)  Dr. Sanders indicated that Plaintiff was "doing very well" and that three times a week she was "working out on the treadmill," "doing pilates," and "bicycling."  (AR 685.)  Dr. Sanders found that although Plaintiff had an "excellent result" from her surgery and that "her complaints are minor," she should have "prophylactic work restrictions" which would preclude "activities of heavy work."  (AR 687.)  Dr. Sanders questioned Dr. Nelson's finding that Plaintiff should be restricted to light work, "which would limit her from essentially all physical activities," especially since she

was "very active and demonstrate[d] her abilities with regard to her pilates, bicycling and treadmill activities." (AR 688.)

G.W. Bugg, M.D. reviewed Plaintiff's medical records on May 25, 2007, and agreed with Dr. Fonte's earlier RFC that Plaintiff could perform a range of light work. (AR 470-71.)

On October 3, 2007, Dr. Nelson reviewed Dr. Sanders' report and contended that Dr. Sanders' evaluation method of Plaintiff's range of motion would not be "fair" to Plaintiff. (AR 662.) Nonetheless, Dr. Nelson "agree[d] that [Plaintiff] has improved significantly with her surgery." (AR 662.) On April 10, 2008, Dr. Nelson examined Plaintiff and found that she was "doing very well" but had "daily aching in her low back with spasming in the left leg" which was "greatly reduced" when Plaintiff engaged in pilates three times a week. (AR 658-59.) Plaintiff was attending school two times a week. (AR 658.) Plaintiff was next seen by Dr. Nelson on April 9, 2009, who indicated that Plaintiff had "good days and bad days," had been taking medication since the prior visit, and felt that her pain was "related to the weather." (AR 654.) Dr. Nelson found that her "disc replacements seem to be functioning quite well." (AR 655.) Plaintiff did not require any further treatment. (AR 655.)

Plaintiff was also seen at Highgrove Medical Center, Inc., between August 20, 2004, and November 7, 2008, where she was treated for various conditions including fibromyalgia, fatigue and flu-like symptoms, and mild bilateral carpal tunnel syndrome. (AR 609-49.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 115-18, 120-25, 126.) On June 3, 2009, ALJ Thomas Gaye held a hearing in which Plaintiff and a vocational expert ("VE") testified. (AR 82-112.)

**1.     Plaintiff's Testimony**

Plaintiff stated on a function report completed on April 18, 2006, that she lived with her son and daughter and that she was able to perform light household chores, drive and shop. (AR 125-26.) However, Plaintiff indicated that her activities were limited to "short periods," or else she would become "flared up" and her pain cycle would be difficult to control. (AR 196.) At the

administrative hearing, Plaintiff testified that her children were grown but still lived with her at home; her son worked part-time and daughter went to school. (AR 87, 91.) Plaintiff stated that she had difficulty getting up in the morning. (AR 90.) Plaintiff was able to cook "light" meals, fold clothes, do light dusting, pick up around the house "a little bit," and put away dishes, but was unable to put clothes in the washer or dryer, sweep, or vacuum. (AR 91-92.) Plaintiff could read, watch television, sit in the yard and "get some sun," and shop at the grocery store for "light things." (AR 91.) She was able to socialize with her family, go to church "occasionally," and look around shops for fun. (AR 93.)

Plaintiff indicated that the disc replacement surgery performed in November 2006 helped to "stabilize" her back. (AR 90.) However, she believed that she was unable to work because she has widespread, constant pain which was controlled minimally through medication. (AR 94-95.) Plaintiff said that she could not sit or stand for very long and would have to "lay [sic] down frequently throughout the day." (AR 95.) Lying down throughout the day would help to take the pressure off her lower back and neck; she would lie down for as little as 15 minutes but would sometimes fall asleep for an hour or more. (AR 97.) Plaintiff would have "flare-ups" which would put her in bed "for three days." (AR 95.)

Plaintiff testified that she was unable to sit at a computer or to sit and read for long periods of time. (AR 100.) Although Plaintiff had been enrolled in college, she let her daughter "type up everything" that Plaintiff dictated because Plaintiff could not type fast enough to remain seated at the computer. (AR 100.) Plaintiff had been enrolled in both online and on-campus classes, taking about one class a semester for the prior five years. (AR 100, 106.)

**2.    VE Testimony**

The ALJ and the VE agreed that Plaintiff's past work as a respiratory therapist was "ruled out." (AR 109.) The VE testified that Plaintiff had no transferrable skills. (AR 109.) The ALJ hypothecated a person of claimant's age, education, and past work experience at the light exertional level, with occasional posturals and occasional reaching overhead, and who required a sit/stand option. (AR 109.) The VE testified that there were positions such as the cashier II, assembler, and order clerk which could accommodate Plaintiff's needs and allow for a sit/stand option. (AR 109-

10.) However, the VE testified that a hypothetical person would not be able to perform the identified positions if the hypothetical person had Plaintiff's background but (1) required unscheduled breaks to lie down, (2) had moderate difficulties with concentration due to medications, or (3) could only occasionally move her head side-to-side and look down for a maximum of three minutes. (AR 110-11.)

## C.   ALJ's Decision

On July 27, 2009, the ALJ issued a decision finding Plaintiff not disabled since December 24, 2004. (AR 9-21.)   Specifically, the ALJ found that (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009; (2) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 24, 2004; (3) Plaintiff had an impairment or a combination of impairments that were considered "severe" based on the requirements in the Code of Federal Regulations; (4) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with limitations which include an option to alternate between sitting and standing every 15 to 20 minutes and no more than occasional climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching; (6) Plaintiff could not perform any past relevant work; (7) Plaintiff was defined as a younger individual on the alleged disability onset date; (8) Plaintiff had at least a high school education and was able to communicate in English; (9) the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules framework supported a finding of "not disabled regardless of whether Plaintiff had transferrable job skills"; (10) the vocational expert testified that there are jobs that exist in significant numbers in the national economy which Plaintiff could perform; and (11) Plaintiff has not been under a disability as defined in the Social Security Act since December 24, 2004, through the date of the ALJ's decision. (AR 14-20.)

Plaintiff sought review of this decision before the Appeals Council.  On December 2, 2009, the Appeals Council denied review.  (AR 5-7.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

1  **D.      Plaintiff's Contentions on Appeal**

2          On March 1, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's

3  decision.  Plaintiff contends that the ALJ (1) failed to give proper weight to Plaintiff's treating

4  physician Dr. Nelson when assessing Plaintiff's RFC and failed to account for Dr. Nelson's finding

5  that Plaintiff was temporarily totally disabled; and (2) failed to properly consider Plaintiff's

6  testimony in the credibility analysis.

7                                   **SCOPE OF REVIEW**

8          The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

9  by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

10  1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

11  of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

12  determine whether the Commissioner applied the proper legal standards and whether substantial

13  evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d

14  909, 911 (9th Cir. 2007).

15          "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

16  *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

17  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

18  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

19  U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

20  evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

21  not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

22  504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

23                                   **APPLICABLE LAW**

24          An individual is considered disabled for purposes of disability benefits if he is unable to

25  engage in any substantial, gainful activity by reason of any medically determinable physical or

26  mental impairment that can be expected to result in death or that has lasted, or can be expected to

27  last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

28  1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or

1   impairments must result from anatomical, physiological, or psychological abnormalities that are

2   demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

3   such severity that the claimant is not only unable to do her previous work, but cannot, considering

4   her age, education, and work experience, engage in any other kind of substantial, gainful work that

5   exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

6       The regulations provide that the ALJ must undertake a specific five-step sequential analysis

7   in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the

8   claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

9   If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

10  or a combination of impairments significantly limiting him from performing basic work activities.

11  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

12  claimant has a severe impairment or combination of impairments that meets or equals the

13  requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

14  §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

15  has sufficient RFC despite the impairment or various limitations to perform her past work.  *Id.*

16  §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that

17  the claimant can perform other work that exists in significant numbers in the national economy.  *Id.*

18  §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the

19  sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

20  (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

21  **DISCUSSION**

22  **A.    The ALJ's Consideration of Medical Opinions**

23      The ALJ considered "all of the medical opinion evidence of record" and found that the

24  opinion of disability determination service consultant Dr. Fonte had the "most probative weight."

25  (AR 19.)  The ALJ found that Dr. Fonte, as a consultative evaluator for the Social Security

26  Administration, had knowledge of the "disability program and access to all of the medical evidence."

27  Further, "Dr. Fonte's report is fully consistent with the record as a whole." (AR 19.)  On August 4,

28  2006, Dr. Fonte determined that Plaintiff was limited to occasionally lifting 20 pounds, limited to

1  frequently lifting 10 pounds, and could sit with normal breaks for about six hours in an 8-hour

2  workday.  (AR 440.)  Plaintiff also had occasional limitations regarding climbing, balancing,

3  stooping, kneeling, crouching, and crawling, and was limited in her ability to reach in all directions.

4  (AR 441.)

5       The ALJ found that the opinion of Plaintiff's treating physician, Dr. Nelson, had "some

6  probative weight" and "emphasized that the restrictions indicated by claimant's treating physician

7  are lesser than those determined in this decision."  (AR 19.)  The Court notes that on March 28,

8  2007, Dr. Nelson's permanent and stationary report indicated that Plaintiff was restricted to "light

9  work only" but indicated no other limitations.  (AR 690-94.)

10      The ALJ also considered the opinion of Dr. Sanders that Plaintiff could perform medium

11  work, but gave that opinion "little probative weight" as Dr. Sanders' findings were "not well

12  supported and [were] inconsistent with the record as a whole."  (AR 19.)

13      Plaintiff argues that the ALJ's RFC assessment lacked the support of substantial evidence

14  because the ALJ failed to give proper weight to Dr. Nelson's opinions and instead gave the most

15  weight to the opinion of Dr. Fonte, the non-examining, non-treating, state agency physician.

16  Specifically, Plaintiff contends that Dr. Nelson's opinions are entitled to greater weight and that Dr.

17  Nelson made numerous findings between April 2005 and April 2007, that Plaintiff was "temporarily

18  totally disabled."  (AR 348, 352, 356, 360, 364, 368, 372, 381, 393, 399, 403, 407, 411, 415, 420,

19  423, 427, 431.)  Plaintiff contends that the ALJ erred in failing to consider Dr. Nelson's finding of

20  temporary total disability, which in turn supports a finding of disability under the Social Security

21  Act.

22      **1.      Legal Standard**

23      The medical opinions of three types of medical sources are recognized in Social Security

24  cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat

25  the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-

26  examining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

27      Generally, a treating physician's opinion should be accorded more weight than opinions of

28  doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater

weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

However, the ALJ "need not discuss *all* evidence presented" but instead must only "explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)). Further, a medical opinion is considered uncontroverted if all the underlying medical findings are similar. *See Sprague v. Bowen*, 812 F.2d 1226,1230 (9th Cir. 1987).

### 2.    The ALJ Did Not Err in His Consideration of Dr. Nelson's Opinion

The ALJ made an RFC determination that Plaintiff had the capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) but that she requires an option to alternate between sitting and standing every 15 to 20 minutes, and she is limited to no more than occasional climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching. (AR 16.) In making this determination, the ALJ gave the "most probative weight" to the medical opinion provided by Dr. Fonte, a consultant for the Social Security Administration who is knowledgeable about the "disability program" and who found Plaintiff limited to light work. (AR 19, 440-41.)

The ALJ further considered and gave "some probative weight" to the medical opinion evidence of Plaintiff's treating physician, Dr. Nelson. (AR 19.) The ALJ "emphasized" that the restrictions indicated in Dr. Nelson's permanent and stationary report – that Plaintiff be limited to "light work only" – were in fact less restrictive than the limitations in the ALJ's decision, which found that Plaintiff required a sit/stand option and was limited to no more than occasional climbing, balancing, stooping, kneeling, crouching, crawling and overhead reaching. (AR 19, 692.)

1    Plaintiff contends that the ALJ erred in determining that Plaintiff had the same RFC for the

2    entire period since the alleged onset date of Plaintiff's injury on December 2, 2004, through the date

3    of the ALJ's decision on July 27, 2009.  Plaintiff asserts that the medical evidence belies such a

4    finding because the ALJ failed to consider that Dr. Nelson found Plaintiff to be "temporarily totally

5    disabled" from April 2005 through April 2007.  (AR 348, 352, 356, 360, 364, 368, 372, 381, 393,

6    399, 403, 407, 411, 415, 420, 423, 427, 431.)  Plaintiff argues that since the term "temporarily totally

7    disabled" is a "term of art in the California workers' compensation system," such a determination

8    supports a finding of disability under the Social Security Act.  (Doc. 15, 8:229:2.)  Accordingly,

9    Plaintiff asserts that the ALJ failed to give proper weight to Dr. Nelson's determination that Plaintiff

10    was disabled through April 9, 2007.

11    Workers' Compensation decisions are not binding on the Social Security Administration.

12    20 C.F.R. §§ 404.1504, 416.904.  Rather, "the ALJ is entitled to draw inferences 'logically flowing

13    from the evidence.'"  *Macri*, 93 F.3d at 544.

14    However, the finding of disability is an issue reserved for the Commissioner, who is

15    responsible for making the determination of whether a claimant meets the statutory definition of a

16    disability.  20 C.F.R. § 404.1527(e)(1).  Opinions on issues reserved for the Commissioner are not

17    considered medical opinions.  *Id*. at § 404.1527(e).  "Although a treating physician's opinion is

18    generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to

19    the existence of an impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*,

20    242 F.3d 1144, 1148 (9th Cir. 2001).  Further, "the opinion that [a claimant] is unable to work is not

21    a medical opinion, but is an opinion about an issue reserved to the Commissioner.  It is therefore not

22    accorded the weight of a medical opinion."  *Martinez v. Astrue*, 261 Fed.Appx. 33, 35 (9th Cir.

23    2007)[3].

24    Accordingly, Dr. Nelson's finding that Plaintiff was "temporarily totally disabled" is not

25    entitled to any special consideration by the ALJ.  *See* 20 C.F.R. § 404.1527(e)(3) ("We will not give

26    any special significance to the source of an opinion on issues reserved to the Commissioner.")  Dr.

27

28    [3] While unpublished decisions are not precedent, unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007, may be cited to the courts of the circuit.  9th Cir. R. 36-3(b).

1    Nelson's finding is not probative concerning the issue of disability, as the finding of a disability is

2    an issue reserved for the Commissioner and is not an issue to be determined by a physician.  Thus,

3    the ALJ did not err by failing to mention Dr. Nelson's determination of temporary total disability

4    because, as noted, the ALJ is not required to discuss all evidence in the record but only to discuss

5    why significant, probative evidence has been rejected.  See *Vincent*, 739 F.2d at 1394-95.

6        Courts will "affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the

7    proper legal standard and his decision is supported by substantial evidence."  *Bayliss v. Barnhart*,

8    427 F.3d 1211, 1217 (9th Cir. 2005).  Here, the Court concludes that, considering the medical

9    evidence as a whole, there is substantial evidence to support the ALJ's decision regarding Plaintiff's

10   RFC determination.  As noted, Dr. Fonte determined on August 6, 2006, within the period of time

11   that Dr. Nelson opined that Plaintiff was "temporarily totally disabled," that Plaintiff was capable

12   of performing light work.  (AR 439-442.)  On May 25, 2007, Dr. Bugg reviewed Plaintiff's records

13   and agreed with Dr. Fonte's earlier RFC assessment that Plaintiff could perform a range of light

14   work.  (AR 470-71.)   Further, the ALJ's decision incorporates the finding of Dr. Nelson that

15   Plaintiff could perform "light work only" and, in fact, imposes greater restrictions than those noted

16   by Dr. Nelson[4], including that Plaintiff alternate between sitting and standing every 15 to 20 minutes

17   and that she is limited to no more than occasional climbing, balancing, stooping, kneeling,

18   crouching, crawling, and overhead reaching.  (AR 692, 19, 16.)

19       The ALJ stated that he "considered all the medical opinion evidence of record." (AR 19.)

20   The decision shows that the ALJ fully considered Plaintiff's medical records when making his

21   determination, including reports of her spinal injury, x-rays, MRIs, surgery, mental health treatment,

22   and complaints of bilateral carpal tunnel syndrome and fibromyalgia. (AR 14-19.)  Accordingly, the

23

24

25       [4] Plaintiff asserts that the ALJ erred in failing to distinguish Dr. Nelson's finding in the March 28, 2007,
     permanent and stationary report that Plaintiff was capable of performing light work as defined by Workers'
     Compensation with the definition of light work as defined in context of a Social Security disability.  The Court is not
26   persuaded by this argument, as the definition of light work is substantially similar between the two agencies.  *Compare*
     20 C.F.R. § 404.1567 ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
27   of objects weighing up to 10 pounds. . . .") *with Glass v. Workers' Comp. Appeals Bd.*, 105 Cal. App. 3d 297, 303 n.1
     (1980) (Light work "contemplates the individual can do work in a standing or walking position, with a minimum of
28   demand for physical effort.").  Further, the ALJ found Plaintiff required more restrictions than those imposed by Dr.
     Nelson, who merely limited Plaintiff to "light work only" but imposed no other limitations.  (AR 19, 692.)

ALJ applied the proper legal standard, and his decision is supported by substantial evidence in the record.

**B.      Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting her subjective complaints.  According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff not entirely credible.

In considering Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR 17.)

**1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529,

416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2.    The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Complaints**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 17.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. *Vasquez*, 572 F.3d at 591.

Plaintiff asserts that the ALJ rejected Plaintiff's subjective complaints "mostly" because Plaintiff "engages in certain daily activities." (Doc. 15, 11:1-2.) This is not an accurate assessment of the ALJ's determination, as the ALJ also found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints. (AR 17.) Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Plaintiff had "significant pathology in her lower back consisting of disc protrusions at L-2-3 and L5-S1 and disc herniations at L3-4, L4-5." (AR 17.) The ALJ noted that Plaintiff initially "underwent conservative treatment consisting of prescription medications, physical therapy and epidural injections" but that ultimately Plaintiff required surgery and "underwent a complete diskectomy with placement of Charite artificial disc replacement at L3-4 and L4-5." (AR 17-18.) Further, the ALJ found that "[t]he fact that claimant underwent surgery certainly suggests that her symptoms were genuine. While that fact would normally weigh in claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms." (AR 18.) The ALJ determined that "[s]pecifically, the claimant reported that her back complaints and symptoms had remarkably improved allowing her to perform a greater amount of activities." (AR 18.)

The record supports this finding, as Plaintiff had reported to Dr. Nelson on December 12, 2006, that she was "doing quite well following her two level disc replacement surgery" and that she was "quite happy." (AR 402-03.)  Further, between January 2007 and April 2009, Dr. Nelson continued to report that Plaintiff was doing well after her back surgery. (AR 398, 655, 658-59, 669.)  Additionally, on October 3, 2007, Dr. Nelson agreed with Dr. Sanders' assessment that Plaintiff had "improved significantly with her surgery." (AR 662.)  The ALJ further found that "during an examination in mid 2007, it was observed that the claimant's range of motion was essentially normal" and that "even in April 2008 it was noted that her back was doing 'so good.'" (AR 18.)  Accordingly, the subjective evidence supported the ALJ's finding that objective medical evidence was inconsistent with Plaintiff's complaint of pain.

Additionally, it was appropriate for the ALJ to consider Plaintiff's activities of daily living in determining that she was not entirely credible.  The mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability.  However, a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills.  Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Morgan*, 169 F.3d at 600; *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).  Moreover, evidence of a claimant's exercising, gardening, and participation in community activities may suggest that the claimant's allegations regarding the severity of her limitations are exaggerated.  *Valentine*, 574 F.3d at 693.

1    The ALJ found that Plaintiff "has described daily activities which are not limited to the extent

2    one would expect, given the complaints of disabling symptoms and limitations," noting that in mid-

3    2007 Plaintiff "was again exercising: working out on the treadmill, bicycl[ing] and doing pilates

4    three times per week. Furthermore, the claimant advised that she had become very active once again

5    and was 'running around all the time.'" (AR 18.)  Additionally, the ALJ noted that "[w]hile the

6    surgery did not alleviate [Plaintiff's] low back symptoms entirely as she continued to have aches and

7    pains, the claimant admitted she was in much less discomfort and had decreased the amount of pain

8    medications she was ingesting."  (AR 18.)  Further, Plaintiff's "cervical spine complaints are

9    diminished by her active daily life including workouts three times per week and her ability to take

10   online college courses." (AR 18.)  As such, the ALJ appropriately considered Plaintiff's admitted

11   activities of daily living, which are comparable to the activities in *Stubbs-Danielson*, *Burch*, *Thomas*,

12   *Morgan*, and *Curry, supra*.  The ALJ found that Plaintiff's activities were inconsistent with her

13   complaints of disabling symptoms and limitations.  Plaintiff's activities of daily living were,

14   therefore, clear and convincing evidence to discount her credibility.

15   In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective

16   complaints regarding the intensity, duration, and limiting effects of her symptoms.  *See Batson v.*

17   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory

18   testimony unsupported by objective medical evidence constituted substantial evidence in support of

19   ALJ's negative credibility determination).  Moreover, the ALJ's reasons were properly supported

20   by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's

21   testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.  *See Turner*

22   *v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

17

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Gina Kirshenmann.


IT IS SO ORDERED.

**Dated:     May 9, 2011** _____/s/ Sheila K. Oberto_____
UNITED STATES MAGISTRATE JUDGE